## Sacks *v.* Sacks, Appellant.

Argued December 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Joseph A. Palmer,* with him *Leon Rosenfield,* for appellant.

*Herman Hurowitz,* for appellee.

OPINION BY WRIGHT, J., March 19, 1963:

On August 17, 1961, Henry M. Sacks filed a complaint in divorce a.v.m. against his wife, Mathilda Pauline Sacks, on the grounds (a) of desertion, and (b) of indignities to the person. On February 9, 1962, Harry W. Steinbrook, Esquire, was appointed as Master. After hearing the testimony, the Master filed a report on March 27, 1962, in which he recommended that a divorce be granted on both grounds. On June 22, 1962, the court overruled the wife's exceptions, and entered a final decree. This appeal by the wife followed.

The parties were married on October 12, 1946, in Doylestown, Pennsylvania. It was the husband's second marriage. He is presently eighty-four years of age. He and his first wife, who died in 1934, had five children, all of whom are now adults and have homes of their own. It was the first marriage for the wife. She is presently seventy years of age. No children were born of their union. The parties first lived together at 516 Roberts Avenue, Glenside, Montgomery County. On December 29, 1948, they moved to 4588 G Street in the City of Philadelphia. This property was a duplex apartment, purchased as tenants by the entireties. Sometime in 1951, the parties erected a cottage in the village of Thatcher, Bucks County, P. O. Quakertown, R. D. 3, on a site selected by the wife, and also purchased as tenants by the entireties. This cottage was subsequently enlarged with the specific intention on the part of both parties that, after the husband's retirement from his employment with The Philadelphia Inquirer, they would make it their permanent home. The husband retired in January, 1959, but the wife thereafter refused on several occasions to leave Philadelphia and move with her husband to

Bucks County. On July 29, 1959, the date of the alleged desertion, the husband again discussed with his wife their moving to Thatcher. The wife refused to go, packed her husband's bags, said that she did not want him around the house, that he could go wherever he desired, but that she would not accompany him to their home in Thatcher. The parties have not lived together since that date.

The applicable legal principles are well settled. The husband's choice of a home is controlling and the wife must live with him provided that his choice is exercised in good faith: *Totino v. Totino,* 176 Pa. Superior Ct. 108, 106 A. 2d 881. As stated by Judge MONTGOMERY in *Popovic v. Popovic,* 195 Pa. Superior Ct. 291, 171 A. 2d 608: "It is the duty of a wife to live with her husband in any home provided by him which is reasonably suitable according to his means . . . Where the wife fails to comply with this duty she is guilty of desertion". In his well-considered report, the Master resolved the issue of credibility in favor of the husband. Although the appellate court is not bound by the Master's appraisal of the weight of the testimony, if his conclusion is based upon a searching analysis of the evidence, as in the case at bar, and has been approved by the court below, it is entitled to considerable weight: *Bench v. Bench,* 199 Pa. Superior Ct. 405, 185 A. 2d 664. Our duty is to make an independent examination of the record in order to determine whether in truth it does establish a legal cause for divorce: *Zirot v. Zirot,* 197 Pa. Superior Ct. 124, 177 A. 2d 137.

Appellant contends that the husband's choice of the home in Thatcher was not made in good faith because it is five miles from a railroad station, six miles from a supermarket, and is situated on an unimproved rural road. However, the wife was originally entirely satisfied with the home in Thatcher. "Q. And after the

226

repairs were made and the alterations you liked the place, didn't you? A. I like the place, yes. Q. And that was going to be the home of your retirement, your domicile after he retired? A. We thought that". She subsequently changed her mind, having apparently lost all interest in her husband except that of a financial nature. We received the impression from reading her testimony that she preferred not to leave her friends in Philadelphia, and was content to live alone in the "comfortable city home" on G Street. We agree with the Master and the court below that the husband acted in good faith, and that the wife had no valid reason for her refusal to live with him. Cf. *Greer v. Greer*, 178 Pa. Superior Ct. 643, 115 A. 2d 794.

Since we have concluded that the evidence establishes a legal cause for divorce on the ground of desertion, it becomes unnecessary to discuss the question of indignities to the person.

Decree affirmed.